512 P.2d 674

**AMERICAN EMPLOYERS' INSURANCE COMPANY, *Plaintiff-Appellee,***

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

No. 9588.

Supreme Court of New Mexico.

July 20, 1973.

Catron, Catron & Sawtell, Thomas B. Catron, III, Santa Fe, for defendant-appellant.

Bivins & Weinbrenner, Las Cruces, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

This suit was brought by American Employers' Insurance Company ("American") against Continental Casualty Company ("Continental") for a declaratory judgment determining the respective obligations of those insurance companies to a Mr. Powell and his successor partnership, an engineering firm, common insureds (hereinafter collectively called "the insured") of American and Continental, and to determine the liability of American to reimburse and indemnify Continental for expenditures made in defending and settling two suits against the insured. Continental counterclaimed against American for indemnification and reimbursement for these amounts asserting it was American's obligation to defend. The suit was tried to the court sitting without a jury, and judgment was entered for American.

As a result of two gas explosions, one in La Mesa, and a second in Las Cruces, suits were filed in the District Court of Dona Ana County by Mr. Camunez and Mr. Mark against the City of Las Cruces and Higdon, Inc. for wrongful death and personal injuries. The City in the Camunez case filed a third party complaint against the insured, and in the Mark case the City and Higdon both filed third party complaints against the insured. These complaints were predicated upon the alleged fact that at the time of each explosion the insured was under contract with the City to perform services in connection with improvements consisting of additions and betterments to its natural gas system.

At the time of each explosion two liability insurance policies with the insured as the named insured were in effect. Continental had issued the insured an "Architects' and/or Engineers' Professional Liability Policy" and American had issued a "Comprehensive Liability Policy." Continental accepted the defense in both suits but American declined. Both the Camunez and Mark suits were settled by Continental which made demand upon American for the respective amounts paid in settlement of the suits and also attorney's fees and other costs incurred by it in the defense of the claims against the insured. This declaratory judgment action by American and the counterclaim by Continental ensued.

Continental's contention is that American had a duty to defend the insured against the third party complaints of the City of Las Cruces in the Camunez suit and the City and Higdon in the Mark suit. Continental argues the application of Satterwhite v. Stolz, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968) in which it was held that an insurer's duty to defend is determined by the allegations of the petition filed by a claimant against the insured, the issue being whether the allegations are sufficient to state a claim within the terms of the policy. American's rebuttal to this argument is that the Satterwhite case in-

volved Texas law and is therefore not instructive as to the law of New Mexico. Although the Satterwhite case did apply Texas law, the law of Texas is in accord with the general rule applicable to determine whether an insurer has a duty to defend. The rule is stated in 1 Long, The Law of Liability Insurance (1973) § 5.02:

"If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages. The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage."

Also, see 7A Appleman Insurance Law and Practice (1962) § 4683; 14 Couch on Insurance 2d (1965) § 51:40.

■ We approve the general rule and begin our application of it by comparing the coverages afforded by the policies in question with the allegations of the third party complaints. American's is a typical comprehensive liability policy. The insurer agrees in the relevant clause:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury as defined herein (bodily injury is defined in the policy as including death) sustained by any person."

Continental agrees in its policy to:

"[P]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of

professional services for others in the insured's capacity as an architect or engineer and if such legal liability is caused by an error, omission or negligent act."

Although the third party complaint by the City in the Camunez suit and by Higdon in the Mark suit refer to the fact that the insured was under contract with the City to perform engineering services, they are based upon theories of general negligence and in no way restrict their assertions to liability based upon the insured's professional capacity as an engineer. The allegations of the third party complaint by the City in the Mark suit are more ambiguous. The complaint refers to the fact that the insured agreed to perform the "services of an engineer" under contract, but it also states that the contract required that the insured " * * * take and have full charge and control of all construction work in connection with the construction of such additions and betterments to the natural gas system, and maintain continuous supervision * * * to assure that the additions and betterments were constructed in accordance with plans and specifications." The fundamental assertion of the complaint was that the damages or injuries suffered by plaintiff were "proximately caused by or contributed to by the negligent, careless and reckless conduct * * * (of the insured) * * * in the performance of his duties or, in the alternative, in the non-performance of his duties * * *" required by the contract.

American points to two exclusions in its policy contending that the third party complaints do not bring the claim within the coverage of its policy when the exclusions are considered. The first of these is the professional liability exclusion which reads:

"It is agreed that the policy does not apply to injury, sickness, disease, death or destruction arising out of defects in maps, plans, signs or specifications, prepared, acquired or used by the insured."

We have already recounted the allegations in the complaints and none of them are limited to defects in maps, plans, signs or specifications prepared, acquired or used by the insured.

American also invites us to consider whether the "completed operations" exclusion in its policy takes the allegations in the complaints outside the coverage of the policy. That exclusion states:

> "It is agreed that the policy does not apply to the Products Hazard as defined therein. It is further agreed that Coverages B and D apply only to accidents arising out of operations of the named insured during the progress thereof and not to accidents arising out of such operations after final completion thereof."

Although it is possible that the accidents in both the Camunez and Mark suits arose out of "completed operations", it is impossible to determine this by looking at the third party complaints.

■ The fact that grounds of damage against the insured other than those stated in the policy are pleaded, is immaterial if the injured person pleaded any grounds against the insured coming within the terms of the policy. Appleman, supra, (p. 444). And as stated in the citation from Long, supra, the duty to defend arises when the facts are not stated with sufficient clarity so that it can be determined from the face of the complaint whether the action falls within the coverage of the policy.

■ The trial court's apparent application of the rules we have discussed is indicated by its conclusion of law number 1 which states:

> "1. Both had duty (sic) to defend on the basis of the Third-Party Complaint; however, Continental's policy provided for specific coverage and American's policy was general coverage."

However, the trial court's conclusion of law number 2 is to the effect that Continental was primarily liable to defend the suits. Thus, the trial court apparently reasoned that even though the complaints indicated that both insurers had a duty to defend, Continental had the primary duty, since its coverage was more specific. Continental challenges conclusions number 1 and number 2 as well as the findings to the same effect. American relies on Maryland Cas. Co. v. State Farm Mut. Auto. Ins. Co., 77 N.M. 21, 419 P.2d 229 (1966) in support of its position. That case is inapplicable to the facts before us. In fact, a comparison of that case with this one reveals the necessity of the principles we invoke here. The Maryland Cas. Co. suit was precipitated by a fire which broke out while one of the insured's employees was delivering gasoline in a tank truck to the premises of a customer. The insured had two liability policies. An automobile liability policy covering the truck had been issued by State Farm Mutual Automobile Insurance Company. Maryland Casualty had issued a general liability policy. The suit concerning the insured's liability was tried and judgment rendered against it. In its later suit, Maryland Casualty argued that State Farm was primarily liable because the accident arose out of the use of the truck. The court, after analyzing the facts found in the tort action, agreed with Maryland Casualty, but not on the basis that its coverage was more general than State Farm's. Rather, the court held that the policies did not cover the same risks and further stated that "Maryland's policy specifically excluded this accident." We do not have the luxury in this case of analyzing the facts surrounding the occurrence of the accidents in the Camunez and Mark suits to determine which insurer was primarily liable, for these suits were settled before trial. It is thus impossible for us to make the determination made by the court in the Maryland Cas. Co. case. Even if we accept the trial court's conclusion that Continental's coverage was more specific than American's, the allegations contained in the third party complaints being general do not bring the suit within the exclusive coverage of that policy. The only issue before us is whether American had a duty to defend and this issue must be resolved

on the basis of allegations in the third party complaints.

■ American cites two cases as authority for the proposition that as between an insurer covering a specific risk and one whose general policy would encompass the same risk, the specific coverage is primarily liable. These cases are Ins. Co. v. Assur. Corp. Ltd., 138 Ohio St. 488, 35 N.E.2d 836 (1941); and Hartford Steam Boiler I. & Ins. Co. v. Cochran O. M. & G. Co., 26 Ga.App. 288, 105 S.E. 856 (1921). The prevailing view as to the liabilities of specific and general insurers in the absence of appropriate policy provisions, and the one which we approve, is stated at 16 Couch on Insurance 2d, (1966) § 62:42, where it is said:

"The fact that a loss comes within the coverage of two policies, one being designed specifically for the loss sustained and the other being a general policy which includes the particular loss within its scope, does not make the specific policy primary insurance and the general policy excess insurance."

For a discussion of the problems arising from "double coverage" and a criticism of the specific versus general distinction, see 2 Long, The Law of Liability Insurance (1973) § 22:03. Also, see Industrial Indemnity Co. v. Continental Casualty Co., 375 F.2d 183 (10th Cir.1967).

Thus, even if we were able to determine from the third party complaints before us that the allegations brought the case within the specific coverage afforded by Continental and not within the limits of an exclusion in American's coverage, we would then have to accept the questionable wisdom of the specific versus general rationale to sustain American's position.

■ Having held, on the basis of the allegations in the third party complaints, that the basic coverage of neither the American nor the Continental policy excluded them from liability, we now consider whether the "other insurance" clauses of the insurers excuse either from liability. Although the other insurance clauses are not identical, they are both of the "excess insurance" variety. The effect of the provisions of each is that if other valid and collectible insurance exists to cover a loss, the policy applies only to cover any deficiency in the other's coverage. Since the allegations in the Camunez and Mark suits were within the coverage of each policy and the claims did not exceed the coverage of either policy, the effect of these provisions, if each were literally applied, would be that the insured had no coverage. However, rules have been developed to avoid such an absurdity. In Oregon Auto Ins. Co. v. United States Fidelity & Guar. Co., 195 F.2d 958 (9th Cir.1952), the court was faced with determining the liability of concurrent insurers arising out of an automobile accident. After determining that the "other insurance" provisions of the policies were indistinguishable in meaning and intent, the court held:

"* * * [W]here both policies carry like 'other insurance' provisions, we think [they] must be held mutually repugnant and hence be disregarded. Our conclusion is that such view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and of the expense of defending the suits."

Also, see United States Fire Ins. Co. v. Insurance Co. of No. America, 328 F.Supp. 43 (E.D.Mo.1971) and the cases discussed therein; 2 Long, The Law of Liability Insurance, supra, § 22:06.

■ Continental also challenges the trial court's finding of fact that because of the many exclusions in the American policy, there would have been a conflict of interest between American and the common insured had American defended either of the suits. This finding was apparently one of the bases of the court's conclusion that Continental had the primary duty to defend. It is generally held that the existence of a conflict of interest alone does not excuse an insurer from defending. Babcock and Wilcox Co. v. Parsons Corporation, 430 F.2d 531 (8th Cir.1970) and the

cases cited therein. Moreover, there are several methods of resolving the conflict, none of which involve an abdication of the insurer's duty to defend under the insurance contract. See Employers' Fire Insurance Co. v. Beals, 103 R.I. 623, 240 A.2d 397 (1968); Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 267 A.2d 7 (1970). Therefore, the trial court's finding as to conflict of interest has no effect upon American's duty to defend.

 Continental's argument is based upon subrogation rather than contractual rights against American. In State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co., 78 N.M. 359, 431 P.2d 737 (1967) we held that an excess insurer which had defended a suit had a right of reimbursement under the theory of subrogation against a primary insurer which had refused to defend. It follows that in a situation in which there are two insurers each with a duty to defend, one of which refuses to defend, the defending insurer has a right of apportionment of expenses and outlays with the other insurer in proportion to the insurance carried. See United Services Auto. Ass'n v. Agricultural Ins. Co., 67 N.M. 333, 355 P.2d 143 (1960).

The maximum coverage afforded by these two policies was $700,000.00—$500,000.00 by the American policy and $200,000.00 by the Continental.

We hold that American must reimburse Continental for five-sevenths of the outlays incurred in defending and settling the Camunez and Mark suits.

Finally, American filed a motion to dismiss under Rule 41(e) [§ 21-1-1(41)(e), N.M.S.A.1953 on which the trial court never ruled. It argues in a counterpoint that this court should affirm the trial court on this basis or alternatively direct the trial court to dismiss the case.

We have not overlooked American's counterpoint. We have examined the record, which does not support the factual predicate upon which American's argument is constructed. Moreover, no hearing was held nor procedures had upon the issues presented by the motion. State Ex rel. Reynolds v. Molybdenum Corp. of Amer., 83 N.M. 690, 496 P.2d 1086 (1972). For these reasons we are of the opinion that the counterpoint is without merit.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

It is so Ordered.

McMANUS, C. J., and OMAN, J., concur.