870 P.2d 745 (1994)
117 N.M. 207
Jose LOPEZ, former Superintendent of West Las Vegas School District No. 1, David Salazar, current Superintendent of West Las Vegas School District No. 1, and Board of Education of the West Las Vegas School District No. 1., Plaintiffs-Appellees,
v.
NEW MEXICO PUBLIC SCHOOLS INSURANCE AUTHORITY, Defendant-Appellant.
No. 20959.
Supreme Court of New Mexico.
February 16, 1994.
Coppler & Aragon, P.C., Scott F. Voorhees, Santa Fe, for defendant-appellant.
Herrera, Baird & Long, P.A., Judith C. Herrera, Michael J. Walz, Santa Fe, for plaintiff-appellees.

*746 OPINION
RANSOM, Chief Justice.
The New Mexico Public Schools Insurance Authority appeals from a summary judgment granted in favor of Jose Lopez, David Salazar, and the Board of Education of West Las Vegas School District No. 1 (collectively referred to as the "School District"). The School District sought and was awarded a declaratory judgment that the Insurance Authority was obligated to defend and indemnify the School District in a federal lawsuit in which the parents and next-friend of a student ("M.B.") sued the School District, Joe Page (a principal), and Jose L. Madrid (an elementary special education teacher).[1] Because we cannot say as a matter of law that all of the personal injury claims in the federal lawsuit arose from an act of sexual molestation that was excluded from coverage, we affirm. The Insurance Authority had the duty to defend the federal lawsuit until it could establish in that primary action that the claims for discrimination and civil rights violations were factually supported only by acts connected with sexual misconduct. We need not reach a question of coverage for injunctive relief.
The complaint for which defense is sought. In late 1988 and early 1989, Madrid allegedly sexually molested M.B. The parents of M.B. sued the School District under the doctrine of respondeat superior for numerous torts directly arising from the molestation. They also brought suit for the School District's primary negligence in the hiring, retaining, and supervising of Madrid, for failure to ensure M.B.'s safety and liberty, and for failure to provide an education for M.B., an individual with disabilities. The complaint stated that M.B. was entitled and qualified to receive an education in a special education classroom and to have an Individual Education Program ("IEP") because she is a person who is disabled with borderline intellect. It also alleged that Madrid had neither the ability, the capacity, nor the qualifications to administer and teach children, particularly children of low intellect with disabilities, because he was a pedophile or child molester. The complaint asserted that the School District violated M.B.'s right to a free appropriate public education and did not enforce her IEP, entitling her to damages and to an order that the School District follow an appropriate IEP. Finally, it alleged numerous constitutional rights violations and race discrimination.
The Public Schools Insurance Authority Act. In order to assist school districts in meeting the costs of insurance, the legislature passed the Public School Insurance Authority Act. See NMSA 1978, §§ 22-2-6.1 to -6.10 (Repl.Pamp.1993). Under powers vested by this Act, the Insurance Authority strives to obtain liability insurance for all school districts while reducing the costs of the coverage by expanding the pool of subscribers and maximizing cost containment opportunities. Section 22-2-6.2. School districts have the right to seek coverage through the Insurance Authority or opt out and seek independent coverage. Section 22-2-6.9. Coverage for commercially uninsurable risks may be provided by the risk management division of the state instead of by the Insurance Authority. NMSA 1978, § 41-4-25(E) (Repl.Pamp.1989). The Insurance Authority maintains a fund for claims up to $150,000 and has obtained general liability coverage in a master policy in which it is the named insured. The school districts that participate are included in the policy by an errors and omissions endorsement to the master policy. Relevant to this case, the School District thus participates under "Endorsement No. 1."
Threshold issue. The threshold issue is whether the insuring agreements of the master policy issued to the Insurance Authority, as amended by Endorsement No. 1, limit to personal injury damages the insurer's agreement to indemnify an official, trustee, director, or council member in the School District. It is uncontested that the general liability insuring agreements solely cover "personal injury(ies)" and are specifically "subject to the Definitions, Exclusions and Conditions." *747 Endorsement No. 24, entitled "Sexual Misconduct Exclusion," provides: "Sexual or physical abuse or molestation of any person by ... any employee of the Assured ... does not constitute personal injury within the terms of this policy and as such any claim arising, directly or indirectly, from the aforementioned is excluded."
The trial court's ruling. The trial court determined as a matter of law that (a) the "Sexual Misconduct Exclusion," upon which the Insurance Authority relied in refusing to provide a defense, "by its own terms, applies only to the definition of personal injury and has no application to the errors and omissions coverage found in Endorsement No. 1 to the policy [agreeing to indemnify an official, trustee, director, or council member in a school district]; and (b) the federal lawsuit giving rise to this declaratory judgment action alleged claims that were separate and apart from the allegation of sexual misconduct, and those allegations come within the coverage, thereby giving rise to the duty to defend." The errors and omissions endorsement states that the insuring agreement for general liability is amended to include indemnification for "any claims" against an official, trustee, director, or council member. The trial court apparently read this endorsement as a separate insuring agreement that did not contain the personal injury limitation of the insuring agreements for general liability. The court interpreted the term "any claims" as broader than the "personal injury claims" to which the insuring agreements for general liability were limited, and found that sexual misconduct was excluded only from the general personal injury coverage and not from the errors and omissions endorsement.
The errors and omissions endorsement is subject to the personal injury terms of the general liability insuring agreements. In the master policy's general liability coverage, the underwriters agree to indemnify the Insurance Authority for liability and damages with respect to claims that "arise solely by reason of personal injury(ies) ... suffered or alleged to have been suffered by" a third person. The errors and omissions endorsement, by its own terms, is an amendment to the general liability provision and is subject to "all terms, clauses and conditions as heretofore."
"An insurance contract should be construed as a `complete and harmonious instrument designed to accomplish a reasonable end.'" Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) (quoting Safeco Ins. Co. of Am. v. McKenna, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977)). The general provision for coverage is limited to claims arising out of personal injury exclusive of sexual misconduct, and the language of the errors and omissions coverage makes it subject to the same "terms, clauses and conditions." We find that the provisions for coverage or exclusions are not ambiguous, that the policy covers only claims for personal injury, and that it specifically excludes coverage for all claims arising from sexual misconduct. We conclude as a matter of law that all of the tort claims except for the alleged IEP violations and constitutional rights violations arose from the alleged molestation of M.B.; therefore, there is no insurance coverage for those claims.
Duty to defend. Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy. See American Employers' Ins. Co. v. Continental Casualty Co., 85 N.M. 346, 348, 512 P.2d 674, 676 (1973). "In determining the applicability of [an] exclusion, [the] focus must be on the origin of the damages, not the legal theory asserted for recovery." Continental Casualty Co. v. Hall, 761 S.W.2d 54, 56 (Tex.Ct. App.1988) (emphasis added), cert. denied, 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990); see also Continental Casualty Co. v. City of Richmond, 763 F.2d 1076, 1080 (9th Cir.1985). In Hall, the court found no coverage for a civil rights claim against the school where the physical injuries occurred at school and the school's policy excluded claims arising from bodily injury. 761 S.W.2d at 56. In Richmond, the court held that civil rights claims asserted against the city depended on there having been an identifiable injury to the plaintiff. Because the insurance policy issued to the city specifically excluded claims arising from bodily injury, the court determined *748 that the policy provided no coverage for the civil rights claims. 763 F.2d at 1080-81.
No duty to defend tort claims arising from sexual molestation or claims alleging no specific damage. The School District contends that the complaint alleges facts that do not arise from the sexual misconduct. It contends that the causes of action for negligent hiring of teachers include allegations that the district acted improperly in hiring all of its special education teachers, not just Madrid. The primary example of a separate claim used by the School District is the allegation that the School District violated or failed to follow an appropriate IEP for the child as required by federal and state law, depriving the child of an appropriate education and violating her rights under the Federal Rehabilitation Act of 1973 and the Education of All Handicapped Children Act. This claim may be characterized as a civil rights violation. The policy defines "personal injury" as including discrimination and violation of civil rights, and arguably includes coverage for injunctive relief in civil rights and personal injury cases.
In order to state a cause of action for negligence in hiring, the Bacas had to allege injury or damage. See Jensen v. Allen, 63 N.M. 407, 409, 320 P.2d 1016, 1017 (1958) (holding that without damage, there is no wrong for which party may be found liable). Alleging generally that the School District was negligent in hiring all teachers did not allege specific damage to M.B. or to the Bacas. The damages from negligence in hiring Madrid arise from the uninsured risk of sexual misconduct, and thus there is no duty to defend a claim for negligence in hiring.
Insurance Authority had duty to defend lawsuit until it could establish in primary lawsuit that all claims fall within the exclusion. The Insurance Authority asserts that all of the Bacas' civil rights claims and the claims for injunctive relief arise from the sexual molestation and are excluded from coverage, citing to Hall and Richmond. Generally, a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question. See Foundation Reserve Ins. Co. v. Mullenix, 97 N.M. 618, 619-20, 642 P.2d 604, 605-06 (1982). In Mullenix, the insurance company sought a declaratory judgment that it had no duty to defend the insureds because an exclusion in the policy applied to preclude the claim against the insureds for coverage. Recognizing the difference between the duty to defend and the duty to pay under the terms of the policy, this Court restated the principle that "[t]he insurer must ... fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." Id. at 619, 642 P.2d 605 (quoting American Employers' Ins. Co., 85 N.M. at 348, 512 P.2d at 676). Finding that the complaint tended to show an occurrence within the coverage of the policy, the Court held that the insurance company had a duty to defend until it could be determined in the primary action whether the exclusionary provision in the policy applied. Id., 97 N.M. at 620, 642 P.2d at 606. Thus, under Mullinex, only if this Court can say that all claims arose out of the molestation as a matter of law would we not remand the question to the trial court in the primary lawsuit.
The Bacas' complaint is written in extremely general language. The Bacas allege that "the Board ... failed to provide evenhanded treatment and reasonable accommodations to [M.B.]," that her "status as an Hispanic person contributed to the failure," that the School District's "actions, customs, practices, policies and usages ... violated their rights to speech and association, [and] intentionally violated their rights to the enjoyment of family and individual rights." They also allege that "Defendants' actions violated plaintiffs' rights to a free appropriate public education," and that "Defendants violated and did not enforce [M.B.'s] IEP." Although it appears to this Court from the factual allegations supporting the causes of action that these claims most likely arose from the molestation and alleged failure of the School District to respond to or prevent *749 those acts, we bear in mind the principle from Mullinex that the factual determination is not for this Court but for the court in the primary action. We cannot say as a matter of law that the alleged civil rights violations arose out of the sexual misconduct. Based on the general allegations, it is possible that the Bacas may have intended to prove that the School District failed to enforce the IEP or discriminated against them in some manner unrelated to M.B.'s molestation. Until the Insurance Authority proved to the satisfaction of the federal trial court that all claims arose from the molestation, however, it was under a duty to defend because the general policy offers coverage for personal injury claims. See, e.g., Mullinex, 97 N.M. at 620, 642 P.2d at 606 (holding that because complaint alleged facts within coverage, insurer had duty to defend even though own investigation revealed claim not in fact covered; implying that insurer could not seek to establish facts in declaratory judgment action); Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 215, 846 P.2d 792, 797 (1993) (in bank) (complaint alleged both sexual and non-sexual acts; insurance company had duty to defend as long as complaint "evinced a possibility that [defendant] would be held liable for damages within the coverage of the policy"). It was for the federal district court to determine whether the claims for discrimination and civil rights violations arose from the molestation upon proper discovery and motion by the Insurance Authority.
Conclusion. We hold that the policy coverage extends only to claims for personal injury and specifically excludes coverage for claims arising from sexual misconduct. We affirm, however, the trial court's grant of summary judgment because the Insurance Authority did not meet its burden of proving as a matter of law that all claims arose out of an excluded act, and the Insurance Authority had a duty to defend until it met that burden.
IT IS SO ORDERED.
FRANCHINI and FROST, JJ., concur.
NOTES
[1] The federal lawsuit was dismissed, but the School District rightly contends that because it was required to incur expenses for its defense as a result of the Insurance Authority's refusal to defend, the issues presented in the declaratory judgment are not moot.