53 F.3d 343
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 TRANSAMERICA INSURANCE GROUP, Plaintiff-Counter-Defendant-Appellee,
v.
HINKLE-KEERAN GROUP, INC., Gene Hinkle,
Defendants-Counter-Claimants-Appellants,
and
Robert Keeran, Defendant.
 Nos. 93-2330, 94-2001.
 United States Court of Appeals, Tenth Circuit.
 April 21, 1995.
 
 1
 Before MOORE and BARRETT, Circuit Judges; and DOWNES, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DOWNES, District Judge.
 
 
 4
 Gene Hinkle and Hinkle-Keeran Group, Inc. ("HKGI") appeal from the district court's order granting Transamerica Insurance Group's ("Transamerica") oral motion for summary judgment wherein the district court concluded as a matter of law that Transamerica had no duty to defend or indemnify in an underlying lawsuit against HKGI. We will affirm the district court's decision.
 
 
 5
 The issues raised in this appeal arise out of a civil action filed in New Mexico State Court styled Hinkle v. FDIC as receiver for Southwest National Bank, and Hinkle-Keeran Group, Inc., No. CV 90-05205 (hereinafter "state court action") (Aplt.App. at 9, 12, 13.) The underlying facts of that state court action merit a brief discussion.
 
 
 6
 Gene Hinkle and his son-in-law, Keeran, formed a corporation, HKGI to manage various commercial properties owned by Hinkle. (Aplt.App. at 23.) Subsequently Hinkle transferred his entire interest in HKGI to Keeran. (Aplt.App. at 116.) As set forth in the second amended complaint filed in the state court action, in December of 1987 Southwest National Bank, without Gene Hinkle's consent or approval, allowed Robert Keeran to change the designation and signature cards on two accounts held by Gene Hinkle.[1]
 
 
 7
 Mr. Hinkle, understandably unhappy with his son-in-law's actions, initiated the underlying state court action against Southwest National Bank. (Aplt.App. at 9.) Subsequently, after Southwest National Bank was taken over by the FDIC, Gene Hinkle filed a second amended complaint in the state court action. (Aplt.App. at 9.) This second amended complaint contained counts for breach of contract, negligence and unfair trade practices against the FDIC as receiver for Southwest National Bank and one count for liability under the doctrine of respondeat superior against HKGI. (Apple.Supp.App. at 1-7.)
 
 
 8
 On July 1, 1991, counsel for Gene Hinkle wrote Transamerica informing it of the lawsuit and advising Transamerica of his intent to amend the complaint, in the state court action, asserting a claim against HKGI.[2] (Aplt.App. at 9.) On September 13, 1991, Transamerica responded requesting additional policy information so that a coverage determination could be made. (Aplt.App. at 11.) Transamerica also asked whether a claim was still being presented against HKGI. (Aplt.App. at 11.) Mr. Hinkle's counsel responded on September 20, 1991, sending Transamerica a copy of the declaration sheet for their policy number 3021 63 61 and a copy of the proposed second amended complaint. (Aplt.App. at 12.) Counsel for Mr. Hinkle also advised Transamerica that a hearing was scheduled on his Motion to join HKGI as a defendant. (Aplt.App. at 12.) On October 21, 1991, Mr. Hinkle's counsel informed Transamerica that he was in the process of having Mr. Keeran served with the second amended complaint and suggested that Transamerica may want to retain counsel and enter an appearance in the matter. (Aplt.App. at 13.)
 
 
 9
 On March 13, 1992, Transamerica wrote Mr. Hinkle's counsel asking to be advised of the status of the litigation and advising him that when Transamerica's insured, HKGI, was brought into the action, Transamerica would review the allegations of the complaint to make a coverage determination. (Aplt.App. at 15.) Counsel for Mr. Hinkle responded on March 17th informing Transamerica that HKGI had entered an appearance and was represented by Mr. Duncan. (Aplt.App. at 16.) Apparently unknown to Transamerica, Mr. Hinkle filed an application for default judgment which was set for hearing on April 22, 1992. (Aplt.App. at 99.) On April 21st HKGI's counsel, Mr. Duncan, informed the state court and Mr. Hinkle's counsel that he would not be filing an answer or appearing at the hearing on application for default. (Aplt.App. at 99.) Mr. Hinkle's counsel wrote Transamerica on April 23, 1992 informing them that a default judgment had been entered against HKGI and that he intended to move for a determination of damages. (Aplt.App. at 17.) On June 15, 1992, a judgment was entered in the state court action against HKGI in an amount of $77,750.00 for compensatory and $250,000 in punitive damages. (Aplt.App. at 54-55.) By order dated August 31, 1992, Gene Hinkle was assigned any rights that HKGI held under Transamerica policy number 3021 63 61.[3] This policy was a commercial general liability policy providing coverage for bodily injury and property damage liability with a term from April 5, 1987, to April 5, 1988. (Aplt.App. at 2, 42.) However, the policy excluded coverage for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Aplt.App. at 42.)
 
 
 10
 After reviewing the second amended complaint filed in the state court action, Transamerica determined and informed Mr. Hinkle, based upon their review, there was neither coverage nor a duty to defend under its policy. (Aplt.App. at 18.) Shortly after that, Transamerica filed its complaint for a declaratory judgment in Federal District Court. (Aplt.App. at 1-5.) In response, HKGI filed a counterclaim which raised for the first time the existence of a management agreement between Gene Hinkle and HKGI. Specifically, this counterclaim alleged negligence by HKGI in not obtaining a fidelity bond as required under the Management Agreement. (Aplt.App. at 22-26.) Hinkle and HKGI moved for summary judgment on their counterclaims. At the summary judgment hearing, counsel for Transamerica orally moved for summary judgment which was subsequently granted. (Aplt.App. at 118.)
 
 
 11
 In a letter setting forth its decision granting Transamerica's motion for summary judgment, the district court found that the second amended complaint, in the state court action, only alleged facts relating to losses resulting from intentional acts which were expressly and unambiguously excluded from coverage under the policy and for which the insurance company had no duty to defend or to indemnify. (Aplt.App. at 119-20.) The district court observed that despite the numerous and detailed factual allegations set forth in the state court complaint, there was a complete absence of any allegation relating to the duty to secure a bond and a negligent failure (against HKGI) to do so. Furthermore, the court noted that such a duty could only be implicated by reference to a document entirely outside the state court pleadings (the management agreement). The district court concluded as a matter of law that no reasonable fact finder could find that the underlying complaint in the state court action set forth a claim falling outside the excluded intentional acts provision. As a result, the district court concluded that Transamerica did not have a duty to defend. (Aplt.App. at 119-20.)
 
 
 12
 On appeal, Hinkle essentially raises two issues: (1) whether Defendant-Appellant Hinkle's second amended complaint made sufficient allegations of negligence to invoke a duty to defend under Transamerica's insurance policy; and (2) whether Transamerica, upon the receipt of notice of a complaint alleging negligence against HKGI, can fail to appear or defend and subsequently assert that it had no duty to defend. Transamerica asserts the sole issue is whether an insurer's duty to defend under an insurance policy which excludes intentional acts is triggered by a complaint which contains a reference to negligence, but factually alleges only intentional conduct by the insured.
 
 Standard of Review
 
 13
 The standard of review of a district court's ruling on summary judgment is de novo, Housing Auth. Of Fort Collins v. United States, 980 F.2d 624, 627 (10th Cir.1992), and we employ the same standard applied by the district court. International Bhd. Of Elec. Workers v. Public Serv. Co., 980 F.2d 616, 618 (10th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Ins., 477 U.S. s242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The ruling of the district court on summary judgment will be affirmed if "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991).
 
 Discussion
 
 14
 Appellant's appeal presents essentially two issues: (1) what effect does Transamerica's failure to appear in the state court action have on this action; and (2) did Transamerica have a duty to defend in the state court action. Beyond responding to Appellant's issues, Appellee asserts that Appellant's claims are barred because of HKGI's failure to demand a defense. See State Farm Fire and Cas. Co. v. Price, 101 N.M. 438, 684 P.2d 524, 529 (Ct.App.), cert. denied, 101 N.M. 362, 683 P.2d 44 (1984).
 
 
 15
 This court will not address the issue of whether a demand to defend was made by HKGI. As set forth in Price, two things must occur before a breach of the duty to defend arises; (1) a duty to defend must exist; and (2) a demand to defend must be made. Id. at 529. Regardless of whether a demand to defend was or was not made in this case it is immaterial if no duty to defend existed. Furthermore, the district court's decision was based solely upon a determination that no duty to defend was triggered by the second amended complaint in the state court action, not upon whether a demand to defend had been made. (Aplt.App. at 119-20.) Accordingly, this Court's focus is limited to issues surrounding the duty to defend, which it finds dispositive.
 
 
 16
 Under New Mexico law, as recognized in Foundation Reserve Ins. Co. v. Mullenix, 97 N.M. 618, 642 P.2d 604 (1982), an insurer's duty to defend is independent from its duty to indemnify. Id. at 619. See also, American Employers' Ins. Co. v. Continental Cas. Co., 85 N.M. 346, 512 P.2d 674 (1973). Setting forth the general rule, the New Mexico Supreme Court, in Mullenix, stated:
 
 
 17
 'If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages. The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage.'
 
 
 18
 Id. at 619-20, citing with approval American Employers' Ins. Co. v. Continental Cas. Co., supra, at 676; see also, Insurance Company of North America v. Wylie Corporation, 105 N.M. 406, 733 P.2d 854 (1987). Stated more recently and succinctly, "[w]hether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy." Lopez v. New Mexico Public Schools Insurance Authority, 117 N.M. 207, 870 P.2d 745, 747 (1994). In addition to these basic rules, the New Mexico Supreme Court has held that "[g]enerally, a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question." Lopez, supra, at 748, citing with approval, Mullenix, supra, at 605-06.
 
 
 19
 In Mullenix, the insurer (appellant) filed a collateral action seeking a declaratory judgment that it had no duty to defend Mullenix (appellee) under the terms of an insurance policy issued by appellant to appellee. Id. at 618. Appellant had issued a basic automobile insurance policy to appellees, who operated a wrecking company. Exclusion (f) of this policy excluded coverage of injury or destruction to property owned or transported by an insured or property rented to or in charge of an insured. Id. at 619. The relevant portions of the complaint provided:
 
 III.
 
 20
 On or about June 27, 1979, the defendant, Floyd Mullenix, did so negligently operate a two/wrecking truck as the agent, servant and employee of the defendant/owner, Tucumcari Wrecking, so as to cause damage to the plaintiff's insured, Quaker Storage; * * *
 
 IV.
 
 21
 As a proximate result of the negligence of the defendant, Floyd Mullenix and Tucumcari Wrecking, the aforementioned tractor trailer rig owned by Quaker Storage was damaged to the extent of $2,094.00.
 
 
 22
 Id. at 620. After reviewing the exclusion under the policy and the facts alleged in the complaint, the court concluded that the complaint was ambiguous because it did not allege that the tractor-trailer rig was being towed, in which the policy exclusion would have applied. Id. Thus, the court held that the complaint alleged facts within the coverage of the policy and the insurer had a duty to undertake the defense even though its own investigation revealed the claim sued upon was not in fact covered.[4] More importantly, the court rejected appellant's attempt, in the declaratory judgment action, to establish actual facts that were contrary to or not alleged in the complaint. Id. at 620. It also observed "that a determination of whether the exclusionary provision of this policy applies in this case should be determined in the primary action brought in Quay County." Id. Finally, citing American Employers' Ins. Co., supra, the court stated "the insurer is under a duty to defend the insured in the primary action until the court finds that the insurer is relieved of liability under the noncoverage provision of the policy." Id. Based upon this language the issue arises as to whether Transamerica, having failed to assert it had no duty to defend in the primary state court action, was precluded, in this collateral proceeding, from asserting no duty to defend existed. Based upon the specific facts alleged in Hinkle's second amended complaint in the state court action and Lopez v. New Mexico Public Schools Insurance Authority, supra, we hold that it was not.
 
 
 23
 In Lopez, the New Mexico Supreme Court further articulated its holding in Mullenix, concerning the insured's duty to defend in the primary action. Lopez involved a declaratory judgment action brought in state court by the School District against the Insurance Authority seeking a determination that the Insurance Authority was obligated to defend the School District in a federal lawsuit brought by a student.[5] Id. at 746. Relying upon an exclusion, the Insurance Authority argued that all of the student's civil rights claims and the claims for injunctive relief arose from acts excluded from coverage. Id. at 748. Citing Mullenix, supra, at 605-06, the court observed that "[g]enerally, a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question." Id. The court further stated:
 
 
 24
 In Mullenix, the insurance company sought a declaratory judgment that it had no duty to defend the insureds because an exclusion in the policy applied to preclude the claim against the insured for coverage. Recognizing the difference between the duty to defend and the duty to pay under the terms of the policy, this Court restated the principle that '[t]he insurer must ... fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage.' Id. at 619, 642 P.2d 605 (quoting American Employers' Ins. Co., 85 N.M. at 348, 512 P.2d at 676). Finding that the complaint tended to show an occurrence within the coverage of the policy, the Court held that the insurance company had a duty to defend until it could be determined in the primary action whether the exclusionary provision in the policy applied. Id., 97 N.M. at 620, 642 P.2d at 606. Thus, under Mullenix, only if this Court can say that all claims arose out of the molestation as a matter of law would we not remand the question to the trial court in the primary lawsuit.
 
 
 25
 Id. at 748. (emphasis added). The Court in Lopez went on to conclude:
 
 
 26
 Although it appears to this Court from the factual allegations supporting the cause of action that these claims most likely arose from the molestation and alleged failure of the School District to respond to or prevent those acts, we bear in mind the principle from Mullenix that the factual determination is not for this Court but for the court in the primary action. We cannot say as a matter of law that the alleged civil rights violations arose out of the sexual misconduct.
 
 
 27
 Id. at 748-49. (emphasis added). The Court held that the Insurance Authority had a duty to defend because it had failed to meet its burden of proving as a matter of law that all claims arose out of an excluded act. Id. at 749.
 
 
 28
 Based upon Mullenix and Lopez we do not believe that Transamerica is precluded from bringing a collateral proceeding seeking a declaratory judgment that it had no duty to defend in the primary, state court action. However, in order for the court in the collateral proceeding to determine that no duty to defend exists, it must be able to say, as a matter of law, that all claims set forth in the complaint arose out of acts excluded from coverage under the policy. Lopez, supra, at 748. The complaints at issue in Lopez and Mullenix failed to state facts with sufficient clarity so it could be determined, as a matter of law, from their face that no claims fell outside the policy exclusions. Furthermore, when the factual allegations in the complaint are ambiguous, the court in the collateral proceeding may not make factual findings to resolve the ambiguity, "The factual determination is not for this Court [the court in the collateral proceedings] but for the court in the primary action." Lopez, supra at 749. Applying these limitations, we find that the district court properly concluded, as a matter of law, that all claims set forth in the second amended complaint fell within the policy exclusion.
 
 
 29
 In its pertinent parts, the second amended complaint in the state court action provides:
 
 
 30
 6. In December of 1987, Defendant Bank permitted Robert Keeran, an employee of Defendant Hinkle-Keeran Group, Inc. to change the designation of the signers of checks to himself without authorization from Gene Hinkle and without authorization of Gene Hinkle on both account number 5208769 and account number 5208785 ...
 
 
 31
 7. In January and February of 1988, Robert Keeran acting in his capacity as an employee of Hinkle-Keeran Group, Inc., on the basis of his unauthorized modifications of Gene Hinkle's accounts, caused the following transactions to occur without the knowledge or consent of Gene Hinkle:
 
 
 32
 a. a transfer of $36,000.00 on January 29, 1988, from the El Dorado account number 5208785....
 
 
 33
 b. a transfer of $20,875.00 on February 16, 1988, from the El Dorado account number 5208769....
 
 
 34
 c. a transfer of $20,875.00 on February 16, 1988 from the Paradise Square account number 5208769 ...
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 COUNT FOUR FOR EMPLOYER LIABILITY UNDER THE DOCTRINE OF
 
 RESPONDEAT SUPERIOR
 
 38
 22. Plaintiff realleges the allegations of paragraphs 1-21 as if hereinafter set forth in their entirety.
 
 
 39
 23. Plaintiff sustained damages due to errors, omissions, intentional acts, fraud and other breach of duty by Hinkle-Keeran Group, Inc.'s employee, Defendant Robert Keeran.
 
 
 40
 24. Defendant Robert Keeran, whose actions caused the Plaintiff's damages, was an employee of Defendant Hinkle-Keeran Group, Inc. at the time Plaintiff suffered damages.
 
 
 41
 25. Defendant Hinkle Keeran Group's employee, Defendant Robert Keeran, was acting within the scope of his employment at the time he caused Plaintiff's damages. Further, Hinkle-Keeran Group, Inc. was aware of the actions of its employee and it ratified and permitted those acts to continue to the benefit of the employer. As a result of the intentional acts, the employer is liable for punitive damages.
 
 
 42
 (Apple.Supp.App. at 2-3, 6.) Unlike Mullenix or Lopez, the second amended complaint in the state court action is not ambiguous as to the facts which formed the basis of the claims against HKGI.[6] The act upon which Hinkle sought recovery against HKGI was Keeran's unauthorized act of altering the signature cards on two of Gene Hinkle's accounts and transferring funds from those accounts with the knowledge and consent of HKGI. We must now compare the factual allegations in the complaint to the insurance policy. See Lopez, supra, at 747 (emphasis added); see also, American Employers' Ins. Co. v. Continental Casualty Co., supra, at 676.[7]
 
 
 43
 The Transamerica policy provides "this insurance applies only to 'bodily injury' and 'property damage'...." The policy requires that "[t]he 'bodily injury' or 'property damage' must be caused by an 'occurrence.' ... (Aplt.App. at 42.) Under the policy an " 'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (Aplt.App. at 49.) Under exclusions, the policy states that the insurance does not apply to " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Aplt.App. at 42.) An exclusionary provision in an insurance policy will be enforced if it is clear and does not violate public policy. Bernalillo County Sheriff's Association v. County of Bernalillo, 114 N.M. 694, 845 P.2d 789, 792; citing with approval Jimenez v. Foundation Reserve Ins. Co., 107 N.M. 322, 757 P.2d 792, 794 (1988). Under New Mexico law, this type of exclusionary clause has been interpreted to exclude coverage for "injury or damage which is expected or intended by an insured." Knowles v. United Services Automobile Association, 113 N.M. 703, 832 P.2d 394, 398 (1992) (finding that exclusionary clause was unambiguous and applicable, but finding it repugnant to the insuring clause of the particular policy at issue.) Appellant has not asserted that the exclusionary clause is repugnant to the policy or that it violates public policy.
 
 
 44
 The unambiguous factual allegations set forth in the second amended complaint filed in the state court action establish that the acts or origin of the damages sought by Hinkle were based upon intentional acts committed by Keeran which HKGI was aware of and ratified. While the second amended complaint alleges Appellant "sustained damages due to errors, omissions, intentional acts, fraud and other breaches of duty by" HKGI, the complaint fails to set forth any facts to support a negligence claim against HKGI. As stated in Lopez, supra, "the focus must be on the origin of the damages, not the legal theory asserted for recovery." Id. at 747 (emphasis added). Here, Appellant's second amended complaint failed to set forth factual allegations (origin of the damages), to support the legal theory asserted, (negligence). Based upon the complaint, the origin of the damages was Keeran's intentional acts which were unambiguously excluded under the Transamerica policy.[8] Therefore, the district court could and did properly conclude, as a matter of law, that all of Appellant's claims arose out of Keeran's intentional acts which were excluded under the Transamerica policy.
 
 
 45
 Appellant further argues, based upon the affidavit of Mr. Madison, that a genuine issue of material fact existed as to whether Appellee breached its duty to defend. In his affidavit, Mr. Madison, based upon his experience as an insurance defense lawyer in New Mexico, concluded that the allegations contained in the second amended complaint gave rise to a duty to defend. (Aplt.App. at 86-87.) As set forth in Specht v. Jensen, 853 F.2d 805, 810 (10th Cir.1988), an attorney may not define the law of the case or usurp the judge's role of determining and adjudicating the law. Through Mr. Madison's affidavit Appellant improperly attempted to usurp the judge's function. It was for the district court judge to determine, based upon the unambiguous facts and allegations set forth in the second amended complaint, whether a duty to defend existed under New Mexico law. If considered, Mr. Madison's affidavit would have improperly usurped the judge's role which is precluded under Specht, supra. Thus, Mr. Madison's affidavit did not create a genuine issue of material fact precluding summary judgment.
 
 
 46
 Finally, Appellant asserts that the district court erred when it allegedly failed to deal with count three of Appellant's counterclaim asserting violations of the New Mexico Unfair Trade Practices Act, N.M.Stat.Ann. Secs. 59A-16-1 et seq. While Appellant asserts that this claim presented a separate claim, independent of the duty to defend, he has failed to cite any legal authority, and we have found none, to support such an argument.[9] Therefore, we decline to consider this issue. See Jordan v. Bowen, 808 F.2d 733, 736 (10th Cir.), cert. denied, 484 U.S. 925 (1987).
 
 
 47
 We therefore AFFIRM district court's grant of summary judgment in all respects.
 
 Entered for the Court
 William F. Downes
 District Judge
 
 
 *
 Honorable William F. Downes, United States District Judge for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The two accounts involved were account number 5208769 in the name of Gene Hinkle d/b/a Paradise Square and account number 5208785 in the name of Gene Hinkle d/b/a Eldorado Square. Robert Keeran and his wife, Mary Jo Griffin were signatories on these accounts. However, before Keeran's actions, the designations and signature cards on these accounts required, without Gene Hinkle's signature, two signatories on all checks. Furthermore, on checks over $5,000 Gene Hinkle was required to be one of the signatories. (Apple.Supp.App. at 2.) Because of these unauthorized changes Keeran was able to transfer $77,750.00 from these two accounts. (Apple.Supp.App. at 3.)
 
 
 [2]
 In his letter, Gene Hinkle's counsel set forth the factual basis of the lawsuit asserting that "Robert Keeran changed the signature cards so that he could sign checks by himself, and he transferred over $77,000.00 from the accounts belonging to Gene Hinkle at those two locations." (Aplt.App. at 9.)
 
 
 [3]
 Specifically, the order provided "ordered, adjudged and decreed that any rights of Hinkle-Keeran Group, Inc. in the Policy of insurance with Transamerica Insurance Company that was in effect when the losses occurred in this case are hereby assigned to Gene Hinkle, for the specific purpose of permitting Gene Hinkle to pursue the rights that Hinkle-Keeran Group, Inc. had in having Transamerica Insurance Company defend and pay any judgment that was obtained by Gene Hinkle in this cause...." (Aplt.App. at 116-17.)
 
 
 [4]
 It was undisputed that Quaker Storage Company's tractor trailer rig was being towed by Mullenix at the time it was damaged
 
 
 [5]
 Subsequent to the filing of the declaratory judgment the federal lawsuit was dismissed. Id
 
 
 [6]
 In Mullenix the complaint was ambiguous as to whether the tractor trailer rig was being towed, in which the policy would exclude coverage, or was ran into by the insured for which coverage existed. Id. at 606. In Lopez the complaint asserted numerous alleged failures by the School District and was ambiguous as to whether plaintiff's claims for discrimination and civil rights violations against the School District were based upon acts of sexual molestation, in which the policy excluded coverage, or upon a failure to provide the plaintiff with an Individual Education Program or some other manner unrelated to the molestation. Id. at 749
 
 
 [7]
 At oral argument counsel for Appellant took issue with this Court's statement in State Farm Fire & Casualty Company v. Mhoon, 31 F.3d 979 (10th Cir.1994), that "Mullenix requires the complaint to 'state[ ] facts' that suggest the case falls within the policy's coverage, 97 N.M. at 619, 642 P.2d at 605; abstract and completely unsubstantiated allegations will not do." Id. at 985. In Lopez, supra, the New Mexico Supreme Court reaffirmed, stating:
 "Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy. (citations omitted). 'In determining the applicability of [an] exclusion, [the] focus must be on the origin of the damages, not the legal theory asserted for recovery.' " (citations omitted) (bracketed material supplied.)
 
 
 [8]
 After Appellee, Transamerica, filed its declaratory judgment action in Federal District Court, Appellant filed his answer and counterclaim. The counterclaim asserted, for the first time, that under a June 27, 1986 Management Agreement between Gene Hinkle and HKGI, HKGI was negligent in failing to obtain a fidelity bond to protect Gene Hinkle from losses such as this. (Aplt.App. at 22-26.) As noted by the district court, the second amended complaint filed in the state court action did not contain any allegations relating to HKGI's alleged failure to secure a bond. (Aplt.App. at 119-20.) Appellant did not plead or raise this claim in his second amended complaint in the state court action. Whether a duty to defend existed is determined by comparing the factual allegations contained in the second amended complaint with the insurance policy, not subsequent allegations set forth for the first time in the declaratory judgment action. Lopez, supra, at 747
 
 
 [9]
 The only case law remotely on point suggests that no claim exists under the New Mexico Unfair Trade Practices Act where an insurer properly denies a claim within the exclusionary provisions of the policy. Castorena v. Colonial Life and Accident Insurance Company, 107 N.M. 460, 760 P.2d 152 (1988) (where insured's claim fell within exclusionary provisions of the policy, trial court properly granted summary judgment on plaintiff's claims of bad faith and violation of the New Mexico Insurance Code, N.M.St.Ann. Secs. 59A-16-1 to 30.)