732 P.2d 873

**WESTERN COMMERCE BANK, formerly Commerce Bank and Trust, Plaintiff-Appellant,**

**v.**

**RELIANCE INSURANCE CO., Defendant-Appellee.**

**No. 16337.**

Supreme Court of New Mexico.

Feb. 10, 1987.

McCormick, Forbes, Caraway & Tabor, Don G. McCormick, Michael Dargel, Carlsbad, for plaintiff-appellant.

Butt, Thornton & Baehr, Paul L. Butt, Albuquerque, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

This case involves a controversy between plaintiff Western Commerce Bank (Bank), an insured, and its insurer defendant Reliance Insurance Company (Reliance) concerning whether the insurance contract required Reliance to defend a counterclaim against the Bank. The Bank brought an action against Reliance for breach of contract and failure to defend. Reliance filed an answer and motion for judgment on the pleadings. After considering the pleadings and the respective arguments of counsel, the trial court found that the third party's allegations against the Bank did not fall within the policy coverage. The court entered judgment on the pleadings in favor of Reliance and dismissed the Bank's complaint with prejudice. The Bank appeals. We affirm.

The sole issue on appeal is whether judgment on the pleadings was proper in that the third party's allegations against the Bank failed to state a claim within the terms of the policy.

■ As a preliminary matter, we hold that under these circumstances, the court did not err in considering the motion for judgment on the pleadings. Reliance in its answer admitted the essential facts in this case, only disputing the legal conclusions to be drawn from the facts. Where the answer raises issues of law only, and the essential facts in the case are uncontroverted, a motion for judgment on the pleadings is properly considered. *See Ollman v. Huddleston,* 41 N.M. 75, 76, 64 P.2d 97, 98 (1937).

The instant dispute was predicated on the following events: In 1981, the Bank filed a suit against Spurlin Properties, Inc. (Spurlin) to recover judgment on a promissory note. On June 18, 1982, Spurlin filed a first amended counterclaim, alleging that: "[the Bank] has, on repeated occasions, exercised its influence as a lending institution to discourage and interfere with third party's business and contractual relations with one or more of the Defendants." At this point, the Bank furnished Reliance with a copy of this amended counterclaim and requested Reliance to defend the counterclaim. Reliance refused to defend, maintaining that the claim alleged against the Bank was not provided for in the insurance coverage and therefore the allegations did not give rise to a duty to defend.

■ On appeal, the Bank relies on *Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 642 P.2d 604 (1982) for its position that Reliance had a duty to defend the Bank throughout the primary action because there was a possibility that the claim was covered under the policy. The Bank argues that Reliance may refuse to defend only when the allegations are completely outside the insurance policy coverage. We have no dispute with the Bank's interpretation of New Mexico law regarding an insurer's duty to defend an insured. The Bank's reliance on *Foundation Reserve,* however, is not helpful. In *Foundation Reserve,* the facts alleged tended to show an occurrence within the coverage and the insurer's only refusal to defend was because an exclusionary provision limited the coverage. By contrast, here Reliance maintains that there was no occurrence or potential coverage because the allegations in the third party's complaint failed to state a claim within the terms of the policy. Whether an insurer has a duty to defend a suit filed by a third party against the insured depends on whether the allegations of the petition are sufficient to state a claim within the terms of the policy. *American Employers' Ins. Co. v. Continental Casualty Co.,* 85 N.M. 346, 348, 512 P.2d 674, 676 (1973). Because the Bank contends that Reliance was obligated to conduct a defense on its

behalf under the policy coverage for personal injury, we will compare the coverage afforded under that provision with the allegations in the third party's counterclaim.

The underlying Comprehensive Insurance Policy defined "personal injury" in pertinent part: "Group B—the publication or utterance of libel or slander or other defamatory or disparaging material." Reliance also issued to the Bank an "Excess Umbrella Policy." Under this policy, Reliance agreed, subject to the limitations in the agreement, to indemnify the insured for all sums which the insured would be obligated to pay for personal injury liability. The insurance agreement also provided that when the underlying insurance did not apply to an occurrence, but was covered by the Excess Umbrella Policy, Reliance would defend a suit against the insured by parties seeking damages on account of personal injury. The Excess Umbrella Policy defined "personal injury" in pertinent part: "(c) the publication or utterance of a libel or slander or of other defamatory material, including disparaging statements concerning the condition, value, quality or use of real or personal property. * * * " By contrast, Spurlin's counterclaim alleges that the Bank has exercised its influence as a lending institution to discourage and interfere with its third party business and contractual relations.

The Bank argues that in construing an insurance policy, the test is what a reasonable person would understand the words in the policy to mean, citing *Cincinnati Ins. Co. v. Davis*, 153 Ga.App. 291, 265 S.E.2d 102 (1980). The Bank further contends that the policy should be strictly construed against Reliance because the umbrella policy is ambiguous and misleading; its very title connoting "full coverage," "multiperil coverage," "hold harmless coverage," or "all risk insurance."

In New Mexico, unambiguous insurance contracts must be construed in their usual and ordinary sense unless the language in the policy requires something different. *Wesco Ins. Co. v. Velasquez*, 88 N.M. 273, 275, 540 P.2d 203, 205 (1975); *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977). When there is ambiguity, however, the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean. *Williams v. Herrera*, 83 N.M. 680, 685, 496 P.2d 740, 745 (Ct.App.1972). We find no ambiguity under the definition of "personal injury." The policy provides coverage for personal injury in the form of a "publication or utterance of libel or slander," including other defamatory material such as disparagement of property and slander of title. The Bank urges us to conclude that Spurlin's counterclaim is within this definition of personal injury because the claim implies that some misdeeds by the Bank contained written or spoken words constituting libel or slander. We disagree.

The allegations in the third party's counterclaim do not establish a claim in libel or slander. In order to state a cause of action for libel or slander, the plaintiff's allegation "shall * * * state generally that the same was published or spoken concerning the plaintiff." NMSA 1978, § 38–2–8 (Orig.Pamp.). In the instant case, the allegations pleaded do not state that any defamatory material was published or spoken, nor can we so imply. *See Armijo v. Albuquerque Anesthesia Services*, 101 N.M. 129, 135, 679 P.2d 271, 277 (Ct.App. 1984).

The Bank alternatively argues that the language in the policy pertaining to "other defamatory material" is a catch-all phrase, covering anything not included in libel or slander. But by definition, "defamatory material" must include a publication or utterance. The law of defamation is comprised of the twin torts libel and slander. Libel is defamation which is written, while slander is defamation that is spoken. The tort of defamation must take either form. The Bank's argument is without merit.

The Bank next argues that the trial court erred because it failed to consider whether the counterclaim's allegations included "disparaging statements concerning the condition, value, quality or use of real or personal property." Disparagement of title, slander of title, defamation of title, or in other contexts, slander of goods, trade

libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property. *Triester v. 191 Tenants Ass'n.,* 272 Pa.Super. 271, 415 A.2d 698 (1979). The trial court found that Spurlin's counterclaim failed to state a claim for libel, slander, or defamation. This finding is sufficiently broad to infer that the court also found that the allegation did not include statements disparaging property. The allegations in the counterclaim do not state a claim for disparagement of property or slander of title. Under either theory, the plaintiff must allege that oral or written statements were made about the quality of property or about the ownership of property.

It is clear that the allegations as stated in the third party's counterclaim were based on interference with contractual relations. In its brief, the Bank conceded that a claim based on tortious interference with a contract would not be covered by the insurance policy. On appeal, however, the Bank maintained that even an allegation based on interference with contractual relations is provided for under the insurance policy. The Bank's position is that disparagement of property, which is undoubtedly covered by the policy, is not only defined as the publication or utterance of derogatory matter concerning the title or quality of property, but also includes dealings that interfere with the contractual relations with others. *See* W. Prosser & W. Keeton, *The Law of Torts,* § 128, at 967 (5th ed. 1984).

We recognize that the intentional interference with negotiations or inducing the breach of an existing contract is often accomplished by the use of unflattering words or statements disparaging property. Thus, it is not uncommon for a claim for defamation or disparagement of title to be combined with a claim for intentional interference with a contract. Here, however, the allegation does not include a claim for defamation or disparagement of title. The pleadings as filed do not give notice of facts potentially within the terms of the personal injury coverage provision of the policy. There were no allegations that the Bank published or uttered anything involving Spurlin's reputation or disparaging Spurlin's property, *see Chicago Title & Trust v. Hartford Fire Ins. Co.,* 424 F.Supp. 830 (1976), and we decline to adopt the Bank's position that the third party's counterclaim of interference with contractual relations necessarily implies such allegations. The allegations in the counterclaim did not show, or tend to show, an occurrence within the coverage. *Cf. American Employers' Ins. Co.,* 85 N.M. at 348, 512 P.2d at 676 (third party complaint allegation stated a claim within the policy coverage); *Foundation Reserve Ins. Co.,* 97 N.M. at 620, 642 P.2d at 606 (the complaint tended to show an occurrence within the coverage of the policy).

For the foregoing reasons, we hold that the trial court was correct in granting judgment on the pleadings in favor of Reliance.

The trial court is affirmed.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS, J., concur.