9 P.3d 639

2000-NMSC-023

PHOENIX INDEMNITY INSURANCE COMPANY, Plaintiff–Respondent,

v.

Lynette PULIS and Larry Pulis, individually and Lynette Pulis, mother, parent and natural guardian of Steven Reese, a minor, Defendants–Petitioners.

No. 25,978.

Supreme Court of New Mexico.

July 6, 2000.

Rehearing Denied Aug. 17, 2000.

Berardinelli & Associates, David J. Berardinelli, Santa Fe, NM, for Petitioners.

Law Offices of Bruce S. McDonald, Bruce S. McDonald, Albuquerque, NM, for Respondent.

## OPINION

MINZNER, Chief Justice.

{1} Appellants Larry and Lynette Pulis appeal from the district court's order granting summary judgment in favor of Appellee Phoenix Indemnity Insurance Company. Phoenix filed a complaint for declaratory relief alleging that Lynette Pulis's minor son, Steven, was not entitled to class-one uninsured motorist (UM) coverage for injuries sustained in an automobile accident. The Pulises counterclaimed. The Pulises and Phoenix both moved for summary judgment. The district court granted Phoenix's motion on the basis that the endorsed named-driver-exclusion provision in the Pulises' policy excluded all coverage if Michael, Steven's older minor brother, were driving. The Court of Appeals affirmed. *See Phoenix Indem. Ins. Co. v. Pulis,* No. 20,343 slip op. at 1 (NMCA Sept. 17, 1999). On appeal, the Pulises contend that (1) exclusion of a minor driver based solely on age violates public policy; (2) the driver exclusion is not applicable because Steven is a class-one insured under the Pulises' UM coverage; and (3) Phoenix's policy is ambiguous as a matter of law. We hold that the named-driver exclusion in this case does not preclude Steven from recovery under the UM coverage provision of the policy. In this case, the driver exclusion was an ineffective rejection of coverage for a class-one insured because the insured had no notice that class-one insureds lacked UM coverage. The provisions for class-one-insured coverage suggested all exclusions were expressed, and UM coverage for class-one insureds was not expressly excluded. We therefore reverse and remand. We do not address the first issue.

## I.

{2} The facts are undisputed. Lynette Pulis and Donald Reese are the biological parents of Michael and Steven, who reside with their mother and her husband, Larry Pulis. On October 28, 1996, the Pulises purchased an automobile insurance policy from Phoenix. Prior to purchasing the policy, the Pulises completed Phoenix's New Mexico auto application. The application contained three separate endorsements titled: New Mexico Agreement to Delete Uninsured/Underinsured Motorists Coverage, Business Use Warranty, and Exclusion of Named Driver. The driver-exclusion provision states:

In consideration of the premium for which the policy is written, it is agreed that the insurance company shall not be liable and no liability or obligation of any kind shall be attached to the insurance company for losses or damages sustained after the effective date of this endorsement while any motor vehicle is driven or operated by....

By endorsing this section of the application, the Pulises elected to exclude Michael from the policy. The Pulises also elected to purchase UM coverage. The portion of the application describing UM coverage provides "that if [the insured] suffer[s] bodily injury or sickness including death, resulting from an accident with a person who does not carry liability insurance, and that driver is at fault, you may make a claim against your own insurance company for general and special damages."

{3} The application also included certain provisions explaining an insured's duties, applicable coverage, applicable exclusions, and limits of liability. The policy was silent on the effect of the named-driver exclusion on an insured's UM coverage. The Pulises' policy went into effect on October 28, 1996 and was therefore in effect on the date of the accident.

{4} On November 5, 1996, during a scheduled visitation, Reese took Michael, fourteen years old, and Steven, ten years old, on an overnight deer-hunting trip without notifying the Pulises. Reese also brought along another boy, Kevin, who was fifteen years old. During the trip, Michael was driving Reese's uninsured Toyota pickup truck. Steven was sitting in the passenger side of the cab and Kevin was standing in the bed of the truck scouting deer with a loaded 30:30 rifle. Michael accelerated and then immediately stopped the pickup truck causing Kevin to fall into the bed of the truck; as he fell, his

rifle accidentally discharged. The bullet struck Michael in the head, fatally wounding him. Steven ran from the truck in an effort to obtain help, but Michael was already dead. Steven was spattered with Michael's blood and sustained emotional injuries.

{5} The Pulises filed a UM claim under their Phoenix policy for Steven's injuries. Phoenix denied coverage contending that the named-driver exclusion excludes all coverage when an excluded driver is operating any motor vehicle. The district judge agreed and granted Phoenix summary judgment.

## II.

{6} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, we review de novo the district court's decision to grant summary judgment. *See Hasse Contracting Co. v. KBK Fin., Inc.,* 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641. The question we address is whether the district court erred in granting summary judgment on the basis that the named-driver exclusion within the Pulises' policy barred Steven from recovery under the UM provision of the policy. This appeal does not raise an issue of first impression for this Court; however, it does provide us with an opportunity to revisit our case law on UM coverage and driver exclusions. We first examine the text of the controlling statutes and our cases interpreting them.

## A.

{7} In the Uninsured Motorist Statute, NMSA 1978, § 66–5–301 (1983), the Legislature has provided:

No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person ... shall be delivered or issued for delivery in New Mexico ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of unin-

sured motor vehicles because of bodily injury ... resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

Section 66–5–301(A). This section incorporates UM coverage into every automobile liability insurance policy issued in the state. UM coverage is divided into three distinct classes of insureds: "(1) the named insureds and members of a named insured's household [(class-one insureds)], (2) persons who are injured while occupying an insured vehicle [(class-two insureds)], and (3) persons who sustain consequential damages as a result of personal injuries sustained by persons who are 'class (1)' or 'class (2)' insureds." Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 4.9(e), at 400 (1988); *see also Konnick v. Farmers Ins. Co.,* 103 N.M. 112, 115, 703 P.2d 889, 892 (1985) (defining class-one insured as "the named insured as stated in the policy, the spouse, and relatives residing in the household" and class-two insured as "any person while occupying an insured motor vehicle"). The objective of compulsory UM coverage is "to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). "[C]ases involving uninsured motorist coverage must be given a qualitatively different analysis by this court than cases which do not involve such coverage." *Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 558, 787 P.2d 835, 838 (1990). We interpret Section 66–5–301 liberally to implement its remedial purpose; any provision allowing for an exception to uninsured coverage is strictly construed to protect the insured. *See Romero,* 111 N.M. at 156, 803 P.2d at 245.

{8} Nevertheless, by express statutory provision, an insured has the right to reject UM coverage. *See* § 66–5–301(C). To be valid, the method of rejection must comply with the regulations promulgated by the New Mexico Superintendent of Insurance. *See Romero,* 111 N.M. at 156, 803 P.2d at 245. Those regulations require that

[t]he rejection must be made a part of the policy by endorsement on the declarations

sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived. *Id.* Because we strictly construe exceptions to UM coverage, unless the named insured rejects UM coverage in a manner consistent with the rules and regulations established by the Superintendent of Insurance, deviations will be invalid, and UM coverage will be deemed part of an insured's liability policy. *See id.* at 157, 803 P.2d at 246.

{9} Further, by express statutory provision, an insured may elect to exclude a driver from coverage under the policy. *See* NMSA 1978, § 66–5–222 (1998). Section 66–5–222 provides a sample form for use as a driver-exclusion provision which states:

> In consideration of the premium for which the policy is written, it is agreed that the company shall not be liable and no liability or obligation of any kind shall be attached to the company for losses or damages sustained after the effective date of this endorsement while any motor vehicle insured hereinunder is driven or operated by. . . .

The driver-exclusion provision signed by the Pulises parallels the language provided by the Legislature in Section 66–5–222.

{10} Driver exclusions are designed to allow an insured to avoid the cost of coverage for "someone with a bad driving record or in a high-risk category, such as a teenage child of the named insureds, since otherwise the premium for the coverage would be exceedingly high." Jay M. Zitter, Annotation, *Validity, Construction, and Application of "Named Driver Exclusion" in Automobile Insurance Policy*, 33 A.L.R.5th 121, § 2[a], at 137–38 (1995). Because named-driver exclusions eliminate significant coverage, such exclusions must be accompanied by "strict requirements in the policies so as to insure the insured's full knowledge and consent to the endorsement." *Id.* at 141. "[A]ll named insureds on a policy are required to sign the driver's exclusion agreement for the exclusion to be valid." *Moore v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 122, 126, 888 P.2d 1004, 1008 (Ct.App.1994) (emphasis omitted).

**B.**

{11} This Court and the Court of Appeals have sustained insurance company defenses based on named-driver exclusions. *See Garza v. Glen Falls Ins. Co.*, 105 N.M. 220, 731 P.2d 363 (1986); *State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 641 P.2d 501 (1982); *Moore*, 119 N.M. 122, 888 P.2d 1004. These cases addressed named-driver-exclusion provisions substantially similar to Section 66–5–222 as well as the provision in the Pulises' policy and we are certain the district court and the Court of Appeals relied on them. We address the cases in the order in which they were decided.

{12} In *Kiehne*, the plaintiff purchased an automobile policy from State Farm containing liability and UM coverage. 97 N.M. at 470, 641 P.2d at 501. At the time Kiehne purchased the policy, he elected to exclude his minor son from coverage through a named-driver-exclusion endorsement. *See id.* at 470–71, 641 P.2d at 501–02. During the term of the policy, Kiehne's vehicle was driven by the excluded minor son who was involved in an automobile accident which resulted in the death of a passenger. *See id.* at 470, 641 P.2d at 501. The trial court entered a declaratory judgment in favor of State Farm declaring that State Farm had no liability to the passenger's estate under the UM provision of the policy. *See id.* at 471, 641 P.2d at 502. On appeal, we addressed the issue of whether the endorsed named-driver exclusion barred claims by the passenger's estate. In concluding that recovery was barred, we determined that the driver-exclusion endorsement was "clear and unambiguous"; the policy excluded "any kind" of liability. *Id.* " 'Any,' in its usual and ordinary sense, means 'without limit.' " *Id.* Thus, "any" precluded all UM coverage for anyone injured when an excluded driver was operating the vehicle. *See id.* The only recourse of the passenger's estate was the passenger's own UM policy if he or she had one.

{13} As a non-household passenger, the passenger in *Kiehne* was a class-two insured

under the State Farm policy. In *Kiehne*, however, we also made the following comment regarding recovery of the class-one insured:

> In this case, Kiehne bargained for a policy which would exclude all coverage if [Kiehne's son] were the driver of one of the insured automobiles involved in an accident. Kiehne could not have recovered under the uninsured motorist provision had he been the passenger; similarly, the estate of [the passenger] cannot recover. In effect, no automobile insurance policy covering the 1973 Chevrolet existed while [Kiehne's son] drove the automobile. Therefore, no one could be an "insured" and claim coverage under the uninsured motorist provision of the policy.

*Kiehne*, 97 N.M. at 471–72, 641 P.2d at 502–03.

{14}   Four years later, in *Garza*, we were presented with a different but related issue: whether a named-driver exclusion bars recovery under a policy's liability provisions. *See* 105 N.M. at 221–22, 731 P.2d at 364–65. In *Garza*, the plaintiff sought recovery for damages sustained in an automobile accident. *See id.* at 220, 731 P.2d at 363. At the time of the accident, the plaintiff's son was operating the vehicle; he was an excluded driver under the policy insuring the vehicle. *See id.* at 221, 731 P.2d at 364. The plaintiff endorsed the exclusion because his son had a prior conviction for driving while intoxicated and had been involved in multiple accidents. *See id.* The plaintiff acknowledged during his deposition that the insurance agent explained why his son was being excluded and that he knew and "understood that there would be no insurance for him or for his son ... at any time that [his son] was driving one of plaintiff's cars after this drivers exclusion endorsement became effective." *Id.* The language of the exclusion stated that the insurer "shall not be liable and no liability or obligation of any kind shall be attached to the company for losses or damages sustained ... while any motor vehicle insured hereunder is driven or operated by" the plaintiff's son. *Id.* at 221, 731 P.2d at 364. We interpreted this language to withhold all coverage under the policy when the plaintiff's son was operating

any vehicle. *See id.* at 222, 731 P.2d at 365. Relying on *Kiehne*, we concluded "that the clear and unambiguous drivers exclusion endorsement ... relieves [Glen Falls] from their obligations of any kind under liability provisions of the policy." *Garza*, 105 N.M. at 222, 731 P.2d at 365 (emphasis omitted).

{15}   Similarly, in *Moore*, the Court of Appeals relied on the holdings of *Kiehne* and *Garza* in reaffirming "that a driver exclusion agreement ... applies to uninsured motorist coverage as well as liability coverage in New Mexico." *Moore*, 119 N.M. at 124, 888 P.2d at 1006. In *Moore*, the plaintiff was a named excluded driver on his parents' insurance policy at the time he was involved in an automobile accident. *See id.* at 123–24, 888 P.2d at 1005–06. The plaintiff was the driver of the vehicle; however, the vehicle was not listed as insured on the policy. *See id.* at 123, 888 P.2d at 1005. The Court of Appeals concluded that the plaintiff was wholly without any coverage when he operated any vehicle, whether insured or uninsured. *See id.* at 125, 888 P.2d at 1007. In reaching this conclusion, the Court of Appeals stated that "[i]t would be illogical to allow State Farm to exclude a certain driver from uninsured motorist coverage when he is operating an insured vehicle, and at the same time require it to cover that person while operating an uninsured vehicle." *Id.*

{16}   *Kiehne*, *Garza*, and *Moore* establish named-driver exclusions as valid endorsements in New Mexico that are applicable to all auto coverage, including liability and UM coverage. Under these cases, an excluded driver, when operating any vehicle, lacks the coverage that he or she would have as a passenger. Further, our cases lead to the conclusion the district court and the Court of Appeals reached: the vehicle the excluded driver is operating becomes an uninsured vehicle for all purposes.

{17}   As applied to the facts of this case, the law as it has evolved with respect to driver exclusions seems inconsistent with our approach to UM coverage. *See Padilla*, 109 N.M. at 558, 787 P.2d at 838. In this case, our precedent creates a gap in coverage for a class-one insured. As a class-one insured, Steven had an expectation of UM coverage if

he were injured in an accident involving an uninsured car. *See Lopez v. Foundation Reserve Ins. Co.,* 98 N.M. 166, 169, 646 P.2d 1230, 1233 (1982). Phoenix's policy did not alert the Pulises that they had no UM coverage in an uninsured car driven by Michael. In enacting the UM statute, "[t]he legislature intended that an injured person be compensated to the extent of liability coverage purchased for his or her benefit." *Foundation Reserve Ins. Co. v. Marin,* 109 N.M. 533, 535, 787 P.2d 452, 454 (1990). Allowing Phoenix's exclusion to apply to class-one insureds without notice or disclosure appears to be contrary to the Legislature's purpose. *Cf. Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 330, 533 P.2d 100, 103 (1975) (interpreting former UM statute that is materially identical to the present statute).

{18}   The facts of prior cases are, in fact, distinguishable. In *Kiehne,* we were presented with deciding the recovery of a class-two insured, not a class-one insured. Unlike *Kiehne,* the Pulises are seeking recovery under the passenger's policy, which is the same policy insuring the excluded driver when he is not operating a vehicle. *Kiehne* did not reach this situation but rather addressed the recovery of a class-two insured not covered by the same automobile policy. In this situation, the estate could seek recovery only under the deceased's own policy for the injury and death resulting from the accident. We recognize *Kiehne* comments that a class-one insured passenger would have no UM coverage if an excluded driver was driving. *See Kiehne,* 97 N.M. at 471–72, 641 P.2d at 502–03. We are not, however, bound by comments that exceed the scope of the holding. *See generally Groendyke Transport, Inc. v. New Mexico State Corp. Comm'n,* 85 N.M. 718, 721, 516 P.2d 689, 692 (1973) (stating dicta "is not controlling"); *State v. Wenger,* 1999–NMCA–092, ¶ 13, 127 N.M. 625, 985 P.2d 1205, *cert. granted,* 127 N.M. 391, 981 P.2d 1209 (1999) (stating "the Court's footnote . . . can be considered unnecessary dicta"); *State v. Coyazo,* 1997–NMCA–029, ¶ 16, 123 N.M. 200, 936 P.2d 882. In *Garza,* the insured admitted on the record that he was informed by the insurance agent that *no* policy covered the son or anyone else when the son operated *any* vehicle. This was not the case for the Pulises. Here, no record exists supporting the inference that Phoenix's insurance agent informed the Pulises that by endorsing the exclusion no coverage existed for any insured when Michael operated any vehicle.

{19}   We believe that under our UM statute and our case law on UM coverage, we must address a question not addressed in either *Kiehne* or *Garza.* That question is whether the named-driver exclusion precludes class-one-insured coverage if the only notice of that possibility arises from the statutory form of driver exclusion provided in Section 66–5–222.

### C.

{20}   "[E]xclusionary [provisions] in insurance contracts shall be enforced so long as their meaning is clear;" however, if the exclusion is ambiguous or conflicts with legislative intent it is rendered void. *Chavez,* 87 N.M. at 329, 533 P.2d at 102 (internal quotation marks and quoted authority omitted) (alteration in original). We have consistently invalidated rejections of UM coverage provisions that are inconsistent with the requirements imposed by statute and the Superintendent. In *Chavez,* for example, we invalidated a restriction on UM recovery that prohibited an insured from recovery when he or she operated an uninsured motor vehicle owned by the insured at the time of the accident. 87 N.M. at 327–28, 533 P.2d at 100–01. This restriction created a gap in coverage that was in conflict with the UM statute. *See id.* at 330, 533 P.2d at 103. In *Kaiser v. DeCarrera,* 122 N.M. 221, 222–23, 923 P.2d 588, 589–90 (1996), we read UM coverage into a policy where the insured had signed a rejection of UM coverage as part of an application for automobile insurance and had never paid premiums for UM coverage. The written rejection in itself, however, was insufficient to exclude UM coverage. *See id.* at 223, 923 P.2d at 590. The declaration pages excluding UM coverage were not attached to, or otherwise made a part of, the policy; thus, the insured lacked affirmative evidence detailing the extent of their coverage. *See id.* at 222–24, 923 P.2d at 589–91. In

*Martinez v. Allstate Ins. Co.,* 1997–NMCA–100, ¶ 18, 124 N.M. 36, 946 P.2d 240, the Court of Appeals prohibited the application of a household exclusion to reduce class-one UM coverage. In reaching this conclusion, the Court of Appeals stated that "underinsured benefits for a Class I insured may be limited only by the conditions imposed by statute: (1) the insured must have the legal right to recover damages, and (2) the negligent driver must be underinsured." *Id.*

{21} We believe that under these cases exclusions from class-one-insured coverage are invalid when unclear. We see no reason under either our cases or the relevant statutes that the named-driver exclusion should be treated differently. The remaining question is whether in this case the insurance application and contract provided notice that UM coverage for a class-one insured ended when an excluded driver operated the insured vehicle.

### D.

{22} Considering the application and policy together, we are persuaded there is an ambiguity created by the election of UM coverage and the driver-exclusion agreement. The auto application and policy do not clearly and explicitly define the limits of insured UM coverage for class-one insureds when the driver is a named excluded driver.

{23} "When there is ambiguity [in an insurance contract] ... the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean." *Western Commerce Bank v. Reliance Ins. Co.,* 105 N.M. 346, 348, 732 P.2d 873, 875 (1987); *see Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n,* 113 N.M. 162, 168, 824 P.2d 302, 308 (1992) ("Giving effect to the insured's reasonable expectations, in cases of policy ambiguity, is of course a well-settled approach to construing and applying language in insurance policies."). "[W]hen we speak of the insured's reasonable expectations we refer to what the hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue, rather than how the particular insured who happens to buy the policy might under-

stand it." *Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127, 130, 879 P.2d 759, 762 (1994). The insurer bears the sole burden of issuing an intelligible policy. *See id.* at 131, 879 P.2d at 763. "If the insurer issues an ambiguous policy, the ambiguities are construed against the insurer." *Id.*

{24} Phoenix disclosed other specific situations in which no UM coverage existed for the insureds. For example, the application stated that "[w]e do not cover bodily injury or property damage suffered while occupying or if struck by a motor vehicle owned by you or a relative and not described on the Declarations page(s)" and "[w]e do not insure any car while used in any racing, demolition or stunting activity." (Emphasis omitted). We also note that additional coverage exclusions are found in the "Family Car Policy" issued to the Pulises. In total, the liability exclusion section details twenty scenarios where liability coverage is excluded. No such section exists for the named-driver-exclusion provision; rather, the provision merely states that "no liability or obligation of any kind shall be attached."

{25} On its face, the exclusionary provisions contained in Phoenix's policy are silent as to their applicability to a class-one insured when he or she is a passenger in an uninsured automobile operated by a named excluded driver. Based on the disclosures in the application, we presume that the Pulises were aware of the above restrictions and we believe the Pulises may have read these exclusions as the only exclusions on recovery under UM provisions. The express language of the application only informs a lay person that the named driver is excluded. That is not sufficient notice that class-one insureds are excluded. *See Verbison v. Auto Club Ins. Ass'n,* 201 Mich.App. 635, 506 N.W.2d 920, 924 (1993) (upholding driver exclusion in part because the warnings placed on the exclusion and policy stated "[w]hen a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others ... remain fully personally liable").

{26} We conclude the excluded-driver provision did not exclude Steven from

UM coverage. In reaching this conclusion we do not preclude all named-driver exclusions. We believe that an insurance company can validly exclude high-risk drivers from any and all coverage; but to do so, they are required to adequately inform an insured of the consequences to all class-one insureds of excluding that driver. This requires written disclosure within the body of the application and policy detailing the lack of UM coverage available to named insureds as well as to household members when they elect to exclude a driver or actual notice of the limitations on coverage. The facts of this case illustrate the necessity to adequately inform the insured of the full extent of coverage and the exclusions and limitations applicable to the policy.

### III.

{27} Phoenix's auto insurance application and issued policy, as currently written, fail to notify the insured of the lack of coverage for class-one insureds when an excluded driver is operating any vehicle. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

{28} **IT IS SO ORDERED.**

FRANCHINI, SERNA, and MAES, JJ., concur.

BACA, Justice, specially concurring.

BACA, Justice (Specially Concurring).

{29} I agree with the result reached by the majority, however I write separately to express my concern about the consequences of the majority's holding. I have serious concerns about the wisdom of a rule that allows an insurance company, even with proper notice, to deny uninsured or underinsured motorist coverage for all class-one insureds in a particular policy when a person subject to a driver exclusion provision under the same policy takes the wheel. I believe that this case presents an issue of first impression. This Court has not, until now, been confronted with a factual scenario where an excluded driver, Michael, was driving while, a class-one insured, Steven, was injured as a passenger, and sought compensation under the

same policy as the excluded driver. I agree with the majority that the issue before us is whether, "the named-driver exclusion precludes class-one-insured coverage" but I am not convinced that any amount of notice would be sufficient to deprive Steven or other members of his family of their class-one status. *See ante* at ¶ 19.

{30} In this case we are not concerned with Michael's coverage as the excluded driver, we are only concerned with Steven's coverage. Steven's coverage as a class-one insured is derived solely from the provisions of the contract without regard to the driver exclusion provision. As a member of the household, Steven was entitled to class-one status and UM coverage. The question then is whether the driver exclusion will be allowed to trump Steven's class-one protection. While the majority concludes that the driver exclusion, when read in concert with the policy was ambiguous and ineffective as a waiver of UM coverage, the majority then holds that if an insurance company "adequately informs an insured of the consequences to all class-one insureds of excluding that driver" then the company can exclude "any and all" coverage. *See ante* at ¶ 26. I disagree, and doubt whether any amount of notice contained within a driver exclusion would be sufficient to deprive the remaining members of the family of their class-one status.

{31} I recognize that it is completely reasonable to allow insureds to bargain away both liability coverage and UM coverage for individual high-risk drivers by signing driver exclusions, and we have so held. *See State Farm Auto. Ins. v. Kiehne,* 97 N.M. 470, 472, 641 P.2d 501, 503 (1982) (holding that driver exclusion applies to UM coverage); *Garza v. Glen Falls Ins. Co.,* 105 N.M. 220, 223, 731 P.2d 363, 366 (1986) (holding that driver exclusion applies to liability coverage). I believe that the Legislature, when drafting the broad language contained in NMSA 1978, § 66–5–222 (1998), intended that the excluded driver would have absolutely no coverage while driving. However, I do not believe that the Legislature intended to eliminate all coverage for the entire family when a driver subject to an exclusion under the same policy

takes the wheel. More importantly, I do not believe that any reasonable insured would understand they are bargaining away their entire family's class-one status by signing a driver exclusion for an individual high-risk driver. *See Western Commerce Bank v. Reliance Ins. Co.*, 105 N.M. 346, 348, 732 P.2d 873, 875 (1987) (stating that test for evaluating policy ambiguities is "what a reasonable person in the insured's position would have understood them to mean").

{32}  We have previously described the broad protection of class-one insureds as "covered by policies no matter where they are or in what circumstances they may be; coverage is not limited to a particular vehicle." *Gamboa v. Allstate Insurance Co.*, 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986). With regard to class-one UM coverage we have stated, "There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 330, 533 P.2d 100, 103 (1975) (quoting *Elledge v. Warren*, 263 So.2d 912, 918 (La.Ct. App.1972)), *superceded by statute recognized in Sandoz v. State Farm Mut. Auto. Ins. Co.*, 620 So.2d 441 (La.Ct.App.1993). I fail to see how these broad protections could be so easily abrogated for the entire family merely by signing a driver exclusion clause that relates to only one driver. Steven was merely riding in an uninsured vehicle, that happened to be driven by an excluded driver under the same policy, when an accident occurred, and he sought compensation for his injuries as a class-one insured. Since UM coverage is personal and follows the individual, and is not dependent on the excluded driver, this is a situation that UM coverage was designed to address.

{33}  I recognize, as does the majority, that the Court in *Kiehne* seemed to indicate that the class-one insured, Kiehne, could not recover under his own policy because an excluded driver was operating the vehicle. 97 N.M. at 471–72, 641 P.2d at 502–03; *see ante* at ¶ 13. However, the issue in *Kiehne* was the recovery of a class-two passenger and not a class-one insured. Since class-two insureds derive their coverage from the status of the vehicle and not from the original policy, the passenger in *Kiehne* was properly denied coverage. 97 N.M. at 471–72, 641 P.2d at 502–03. In *Kiehne* there was no coverage on the vehicle while the excluded driver operated it, and therefore, there was no coverage for the class-two insured. However, *Kiehne* did not face the issue that we address today. I believe that the dicta in *Kiehne* which suggested that a class-one insured would not be covered failed to recognize the special status that class-one protection affords under New Mexico law.

{34}  In the final analysis, I do not believe that once a family has chosen to pay for the protection of UM coverage, a simple driver exclusion should be allowed to infect the entire family's class-one status regardless of the notice afforded the insured. For these reasons, I specially concur in this case.